IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNDON HOFF | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| SPRING HOUSE TAVERN | : | NO. 13-0662 |

MEMORANDUM

**SURRICK, J.**                                                                       **JUNE  4 , 2013**

      Presently before the Court is Defendant Spring House Tavern's Motion to Dismiss. (ECF No. 14.) For the following reasons, Defendant's Motion will be granted.

**I.    BACKGROUND**

    **A.    Procedural History**

      Plaintiff filed a Complaint on February 5, 2013. (ECF No. 1.) On February 27, 2013, Defendant filed a motion to dismiss the Complaint for failure to state a claim. (ECF No. 4.) On April 1, 2013, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 12.) In the Amended Complaint, Plaintiff asserts four claims against Defendant. Plaintiff alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (Count I), retaliation based on race in violation of Title VII (Count II), denial of equal rights under the law in violation of 42 U.S.C. § 1981 (Count III), and discrimination based on race in violation of the provisions of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 *et seq.* ("PHRA") (Count IV).

      Defendant has filed a second Motion to Dismiss for Failure to State a Claim. (Def.'s

Mot., ECF No. 13.)[1]  On April 22, 2013, Plaintiff filed a Response in opposition to the second Motion.  (Pl.'s Resp., ECF No. 15.)

### B. Factual History[2]

Plaintiff is an African-American male who was employed by Defendant from November of 2009 through February 14, 2010.  (Am. Compl. ¶¶ 13-14.)  Defendant is a restaurant and bar located in Montgomery County, Pennsylvania.  (*Id.* at ¶ 12.)  On February 14, 2010, Plaintiff arrived at work.  (*Id.* at ¶ 16.)  Michael Gambino, a Caucasian employed by Defendant, was directing traffic.  (*Id.* at ¶ 17.)  Gambino was speaking to the owner of the restaurant and other employees about cars that had to be moved.  (*Id.*)  Plaintiff asked Gambino if he had to move his vehicle.  (*Id.* at ¶ 18.)  Gambino replied, "yes, you're lucky, if I had my white hooded sheet on I would have taken your fucking truck."  (*Id.*)  Plaintiff understood the comment about a "white hooded sheet" as being a reference to the Ku Klux Klan.  (*Id.*)  Plaintiff left the room and later returned, informing Gambino that he found the comment offensive.  (*Id.* at ¶ 19.)  Gambino laughed and sarcastically mocked Plaintiff's reaction.  (*Id.*)  Plaintiff complained about the comment to Kathy Burns, one of the owners of Spring House Tavern.  (*Id.* at ¶ 20.)  Plaintiff informed Burns that he was going to leave based on Gambino's comment.  (*Id.* at ¶ 21.)  Burns asked Plaintiff to stay.  (*Id.* at ¶ 22.)  She then went to the back of the restaurant and returned to Plaintiff and informed him that she had terminated Gambino's employment because of his racially

---

[1] Defendant's first motion to dismiss was dismissed as moot.  (ECF No. 14.)

[2] In considering Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 83 (3d Cir. 2011)).  We rely on the operative facts as presented in Plaintiff's Amended Complaint.

discriminatory statement and conduct. (*Id.*) Plaintiff agreed to stay and continue his shift. (*Id.* at ¶ 25.) Minutes later, Burns informed Plaintiff that Gambino would not be leaving and told Plaintiff that he needed to make a decision about whether he stayed at work. (*Id.*) Plaintiff replied that he was not comfortable in the environment and said that he had to leave. (*Id.* at ¶ 27.) Burns told Plaintiff that the decision was his. (*Id.*)

On or about March 10, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and retaliation. (*Id.* at ¶ 9.) On November 7, 2012, the EEOC issued a Notice of Right to Sue. (*Id.*) This action was filed on February 5, 2013. (*Id.*)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Failure to state a claim upon which relief can be granted is basis for dismissal of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief," *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), "a court need not accept as true 'legal conclusions' or '[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Wilson v. City of Phila.*, 415 F. App'x 434, 436 (3d Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1949). "A complaint may not be dismissed because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York, Pa.*, 564 F.3d 636, 646 (3d Cir. 2009). However, a plaintiff's claims "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

Although plaintiffs in a Title VII employment discrimination suit must eventually satisfy the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Plaintiff is correct that, at this juncture, he need not establish a *prima facie* case of discrimination. *See Fowler*, 578 F.3d at 213 ("Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotation marks omitted); *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *7 (D.N.J. June 9, 2010) ("To prevent dismissal, a plaintiff must set out sufficient factual matter to show that the claim is facially plausible."). In determining whether dismissal is appropriate at this stage, courts complete a two-part analysis. *Fowler*, 578 F.3d at 210. First, the court separates the factual and legal elements of the claim and accepts all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211.

### III. DISCUSSION

#### A. Hostile Work Environment Claim (Count I)

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a hostile work environment is present "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To succeed on a hostile work environment claim, a plaintiff must establish (1) that he suffered intentional discrimination on the basis of his race, (2) that the discrimination was severe or pervasive, (3) that the discrimination detrimentally affected him, (4) that the discrimination would have detrimentally affected a reasonable person in similar circumstances, and (5) a basis for employer liability. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). However, the "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)).

To be actionable under Title VII, an "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). As the Court pointed out in *Faragher*, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of

employment.'" *Id.* at 788.  These decisions underscore that Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  The inquiry into whether a work environment is sufficiently extreme under Title VII encompasses both objective and subjective components.  *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 690 (W.D. Pa. 2010) (citing *Harris*, 510 U.S. at 21-22).  In analyzing those components, "[a court] consider[s] . . . the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hightower v. Easton Area Sch. Dist.*, 818 F. Supp. 2d 860, 877 (E.D. Pa. 2011) (quoting *Caver v. Trenton,* 420 F.3d 243, 262-63 (3d Cir. 2005)).

   Plaintiff contends that Spring House Tavern's failure to terminate the employment of an employee who had made a harassing comment to Plaintiff on the basis of his race constitutes racial discrimination in violation of Title VII and the PHRA.  (*See* Compl.)  Defendant does not dispute that Plaintiff, an African-American, is a member of a protected class, nor does Defendant dispute that Plaintiff was qualified for his position at Spring House Tavern.  With regard to the adverse employment action element, Plaintiff contends that he was constructively discharged from Spring House Tavern.  (Pl.'s Resp. 7.)  Constructive discharge occurs if "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984)).  Constructive discharge is actionable after a continuous pattern of discriminatory treatment over the course of years, *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d

Cir. 1996), and the Third Circuit has refused to "state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign." *Levendos v. Stern, Entm't, Inc.*, 860 F.2d 1227, 1232 (3d Cir. 1988); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) ("Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe."). For a single incident to serve as the basis for a claim of constructive discharge, "[a]n employment discrimination plaintiff may simply face a more difficult burden of proof in establishing the employer's liability . . . ." *Levendos*, 860 F.2d at 1232; *see also Lawrence v. F.C. Kerbeck & Sons*, 134 F. App'x 570, 572 (3d Cir. 2005) (finding that discrimination limited to isolated incident "could not establish working conditions so intolerable that a reasonable person subject to them would resign").

      Here, we cannot say that the incident on February 14, 2010, which constituted a single comment in a brief conversation, was so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign. In Title VII cases, courts distinguish "physically threatening or humiliating" statements from "mere offensive utterance[s]." *Harris*, 510 U.S. at 23. Plaintiff's co-worker made one insensitive offensive comment and Plaintiff had reason to be upset and to inform his supervisor. However, it can hardly be said that this single comment was so severe and pervasive as to create a hostile work environment. Because Plaintiff was dissatisfied with the lack of instant discipline enforced against his co-worker, he elected to leave the workplace. Even though Plaintiff's supervisor could have handled the matter better, Plaintiff did not really give Defendant a reasonable opportunity to remediate the situation and to improve the workplace environment. Plaintiff has not pleaded a set of facts that establish an environment where a

reasonable employee would be forced to leave.

Moreover, the fact that Plaintiff encountered an unpleasant isolated incident does not mean that the terms and conditions of Plaintiff's employment were altered. *See Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73-74 (3d Cir. 2003) (finding that off-color comments were insufficient to create a racially hostile work environment); *Smith v. De Novo Legal, LLC*, No. 12-296, 2012 WL 5873679, at *3 (D.D.C. Nov. 21, 2012) (granting motion to dismiss where court found that the plaintiff had failed to plead facts such that "the workplace was 'permeated with discriminatory intimidation, ridicule, and insult'"); *Mayo v. Mercy Phila. Hosp.*, No. 10-5261, 2011 WL 1045101, at *3 (E.D. Pa. Mar. 22, 2011) (granting the defendant's motion to dismiss on the plaintiff's hostile work environment claim "because the conduct alleged [did] not rise to the level of 'severe or pervasive'"); *Chan v. Cnty. of Lancaster*, No. 10-03424, 2011 WL 4478283, at *19 (E.D. Pa. Sept. 26, 2011) (same); *Cannon v. Corr. Med. Servs.*, 726 F. Supp. 2d 380, 394 (D. Del. 2010) (finding that perceived racially offensive statements were offhand comments and constituted isolated incidents that were not severe and pervasive); *Lueck v. Progressive Ins., Inc.*, No. 09-6174, 2009 WL 3429794, at *3 (W.D.N.Y. Oct. 19, 2009) (granting the defendant's motion to dismiss on the plaintiff's hostile work environment claim where the only alleged harassing behavior was the sending by defendant of a single offensive e-mail). Plaintiff has not set forth sufficient facts in his Amended Complaint to sustain a Title VII claim of racial discrimination as a result of a hostile work environment claim.

    **B.**    **Retaliation Under Title VII (Count II)**

Plaintiff also brings a claim alleging retaliation under Title VII. Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees

. . . because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To properly establish a *prima facie* case of retaliation, plaintiff must show the following: (1) he engaged in a protected activity; (2) the employer took an adverse action against him; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action. *See Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). As with a claim based on discriminatory termination, retaliation claims are subject to the *McDonnell-Douglas* burden-shifting framework. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004). At this point, however, Plaintiff need only allege sufficient facts to demonstrate a "plausible claim for relief." *Fowler*, 578 F.3d at 211.

"Protected activity" encompasses opposition to unlawful discrimination under Title VII. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Moore*, 461 F.3d at 340). Plaintiff's belief that the activity serving as the basis for the unlawful discrimination must be objectively reasonable. *Id.* While "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII," *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006), grievances, formal or informal, relating to discriminatory conduct prohibited by Title VII will be protected. *Tran v. Delavau, LLC*, 615 F. Supp. 2d 381, 387 (E.D. Pa. 2009). Here, Plaintiff complained to his supervisor about a comment made by a co-worker. (Am. Compl. ¶ 20.) Accordingly, Plaintiff satisfies the first prong of the Title VII retaliation inquiry.

Plaintiff claims that his employment was constructively terminated. This was the "adverse

action" that was taken against him. (Pl.'s Resp. 7.) As discussed above, we are compelled to conclude that Plaintiff was not constructively discharged when his supervisor failed to terminate a co-worker who had made one inappropriate racial comment. Moreover, even if Plaintiff had been constructively discharged, he has failed to plead a causal connection between his participation in the protected activity and the adverse employment action. Under such a theory, Plaintiff would have to plead that because he complained to a supervisor about an offensive comment, the supervisor chose not to punish that employee, and Plaintiff was constructively discharged by way of retaliation. Such an interpretation is unreasonable. Plaintiff has failed to plead a proper retaliation claim under Title VII.

    **C.    Equal Rights Under the Law (Count III)**

Under 42 U.S.C. § 1981:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981. To succeed on his claim under Section 1981, Plaintiff must allege that: (1) he belongs to a racial minority; (2) he was qualified for the position which he held; (3) he was discharged from that position; (4) his co-workers, who were white, were not discharged. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir.1987) (citations omitted). As discussed above, Plaintiff cannot establish that he was constructively discharged from his position. Plaintiff voluntarily left his employment because he did not like the way his supervisor handled an inappropriate racial remark by a co-employee. This is not a constructive discharge. Plaintiff's failure to plead constructive discharge is fatal to his Section 1981 claim.

**D.    Pennsylvania Human Relations Act Claims (Count IV)**

Section 955 of the PHRA makes it "an unlawful discriminatory act" for an employer to discharge from employment any individual on the basis of that individual's race.  43 Pa. Stat. § 955(a).  Similarly, as an analogue to Title VII, it is an "unlawful discriminatory act" for an employer to "discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."  *Id.* § 955(d).

"The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (*overruled in part on other grounds by Burlington*, 548 U.S. at 53)).  Accordingly, just as Plaintiff's Title VII allegations do not state a claim upon which relief can be granted, Plaintiff's PHRA claim must fail.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted. An appropriate Order follows.

**BY THE COURT:**

*/s/ C.S.H./*

**R. BARCLAY SURRICK, J.**
